**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | **CASE NO. 19-12262-CSS** |
| | : | |
| **NORTHSTAR HEALTHCARE** | : | |
| **HOLDINGS, INC.,** | : | |
| | : | **CHAPTER 7** |
| | : | |
| **DEBTOR.** | : | |

**EXPEDITED MOTION FOR ENTRY OF ORDER GRANTING**
**BBVA USA, AS AGENT, RELIEF FROM THE**
**AUTOMATIC STAY AND OTHER RELIEF UNDER 11 U.S.C. § 362(d)(1)**

BBVA USA f/k/a Compass Bank ("BBVA USA"), in its capacity as administrative agent and super priority agent (in such capacities, the "Agent"), by and through its undersigned counsel, for itself and the lenders (the "Lenders") party to certain secured credit facilities, represents the primary secured creditors in this case, files this Expedited Motion For Entry Of Order Granting BBVA USA Relief From The Automatic Stay And Other Relief Under 11 U.S.C. §362(d)(1) (this "Motion").  The Agent respectfully avers the following:

**I. JURISDICTION**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this chapter 7 case, the above-referenced debtor (the "Debtor"), property of the Debtor's estate and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor

consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      This is a matter under 11 U.S.C. § 362(d)(1) and Rule 4001 of the Federal Rules of Bankruptcy Procedures and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware for, inter alia, relief from the automatic stay arising from the filing of the voluntary chapter 7 petitions of Nobilis Health Corp., Northstar Healthcare Holdings, Inc. and Northstar Healthcare Acquisitions, L.L.C., one of which is the above-referenced debtor (the "Debtor") on October 21, 2019.

## II. OVERVIEW

3.      On October 21, 2019, the Debtor (sometimes, the "Holdings Debtor") filed its voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code.  In addition, the Holdings Debtor's immediate subsidiary, Northstar Healthcare Acquisitions, L.L.C. (the "Borrower Debtor") filed its voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware under Case No. 19-12263-CSS.  Further, the Holdings Debtor's immediate parent company, Nobilis Health Corp. (the "Parent Debtor") filed its voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware under Case No. 19-12264-CSS.

4.      The above-referenced chapter 7 cases have not been administratively consolidated.

5.      Immediately following the commencement of the chapter 7 cases, the United States Trustee's Office appointed Alfred T. Giuliano as the interim Chapter 7 Trustee for each of Borrower Debtor, Holdings Debtor and Parent Debtor (collectively, the "Debtors").

6.      Generally speaking, none of the bankruptcy estates of the Debtors have any assets, other than their direct ownership interests in insolvent subsidiaries.  As more fully described below, there is a certain deposit account at BBVA USA ending in 5356 (the "Sweep Account") that is in the name of the Borrower Debtor, but that contains proceeds of receivables generated by the insolvent Non-Debtor Loan Parties (as defined below) and swept to such Sweep Account, which account and all funds contained therein are subject to the perfected first-priority unavoidable liens of the Agent pursuant to the Deposit Account Control Agreement (as defined below).

7.      As more fully described below, on September 24, 2019, the Agent obtained an order of a state court in Texas appointing Howard Marc Spector as receiver (the "Receiver") for all of the assets of (i) the Debtors, and (ii) the approximately forty-five affiliates of the Debtors (collectively the "Non-Debtor Loan Parties") that are party to one or more of the Credit Agreements (as defined below) and Security and Guaranty Agreements (as defined below).  A copy of the Receivership Order (as defined below) is attached hereto as **Exhibit A** and is incorporated herein for all purposes. The Receiver has been winding down the assets of the Non-Debtor Loan Parties since September 24, 2019, and is continuing to monetize the equipment, inventory, accounts receivable, general intangibles, equity interests, and other assets of the Non-Debtor Loan Parties.

8.      The Receivership Order, and the litigation in connection therewith, has included as defendants, the Debtors.  By this Motion, the Agent seeks relief from the automatic stay to make clear that the Receivership Order shall continue in place, notwithstanding the bankruptcy filings of the Debtors, but the Agent (and the Receiver) shall otherwise take no actions against the Debtors or the assets of the Debtors, other than actions against the Sweep Account, and potentially co-owned data, books and records.  Further, through this Motion, the Agent seeks to clarify and obtain a determination from this Court that the Receivership Order and the Receiver's performance of his

duties and exercise of his rights under the Receivership Order do not constitute an exercise of control over the Debtors or their estates.  Moreover, through this Motion, the Agent seeks to clarify that the Agent may retain or designate one or more individuals to reconcile accounts and distributions by a non-Debtor entity in which the Debtors hold an indirect interest; such entity not being a wholly-owned subsidiary of the Debtors.

9.     As a matter of background, the Debtors, through their direct and indirect subsidiaries, owned, operated, managed or co-managed a portfolio of specialty surgical hospitals, ambulatory surgical centers and multi-specialty clinics in Texas and Arizona that were operated as ventures with specialty doctors.  Beginning on or about October 28, 2016, the Agent and Lenders made certain loans and advances, and provided other financial accommodations which loans, advances and other financial accommodations are secured by validly perfected, enforceable, unavoidable, first-priority security interests in and liens on all of the assets of the Debtors and the Non-Debtor Loan Parties.  The unpaid balance of the indebtedness owed, jointly and severally, by the Debtors and the Non-Debtor Loan Parties pursuant to the Credit Agreements and the Security and Guaranty Agreements, to the Agent and the Lenders, as of October 11, 2019, was no less than $135 million (the "Indebtedness").

### A. THE CREDIT AGREEMENTS

10.     On or about October 28, 2016, the Debtors and the Non-Debtor Loan Parties, entered into that certain Credit Agreement with the Agent, and the Lenders party thereto from time to time (as amended, supplemented, or otherwise modified from time to time, the "Credit Agreement"), as amended and modified by (1) that certain Amendment No. 1 to Credit Agreement and Waiver, dated as of March 3, 2017, (2) that certain Amendment No. 2 to Credit Agreement, dated as of November 15, 2017, (3) that certain Second Limited Conditional Waiver and

Amendment No. 3 to Credit Agreement, dated effective as of December 31, 2018, (4) that certain Second Limited Conditional Forbearance Agreement, Consent and Fourth Amendment to Credit Agreement, dated as of April 30, 2019, and (5) those certain Joinder Agreements, executed and delivered from time to time by certain Non-Debtor Loan Parties to join such affiliates as loan parties to the Credit Agreement (collectively, the "Joinders").  True and correct copies of the Credit Agreement, all amendments thereto, and each of the Joinders, were provided to the Chapter 7 Trustee's counsel on October 22, 2019.

11.    On or about May 23, 2019, the Debtors and the Non-Debtor Loan Parties entered into that certain Super Priority Credit Agreement (as amended, supplemented, or otherwise modified from time to time, the "Super Priority Credit Agreement" and together with the Credit Agreement, the "Credit Agreements") dated effective May 22, 2019, with the Lenders party thereto and the Agent, as amended by that certain Limited Conditional Waiver and Amendment No. 1 to Super Priority Credit Agreement, dated effective as of July 31, 2019.  True and correct copies of the Super Priority Credit Agreement and all amendments thereto, were provided to the Chapter 7 Trustee's counsel on October 22, 2019.

**B.  THE GUARANTY AND SECURITY AGREEMENTS**

12.    On or about October 28, 2016, to secure the Debtors' and the Non-Debtor Loan Parties' obligations to the Agent and the Lenders under the Credit Agreement and loan documents executed in connection therewith, including the payment of the indebtedness thereunder, Debtor Northstar Healthcare Holdings, Inc. and certain of its affiliates, as grantors and guarantors, and the Agent executed and delivered that certain Guaranty and Security Agreement, dated as of October 28, 2016 (as amended, supplemented, or otherwise modified from time to time, "Guaranty and Security Agreement"), as amended and modified by (1) that

certain Reaffirmation and Omnibus Amendment Agreement (the "Omnibus Agreement"), dated as of May 22, 2019, and (2) the Joinder Agreements pursuant to which certain Non-Debtor Loan Parties joined the Guaranty and Security Agreement, as grantors and guarantors.  True and correct copies of the Guaranty and Security Agreement and all amendments thereto were provided to the Chapter 7 Trustee's counsel on October 22, 2019.

13.    On or about May 23, 2019, to secure Debtor Northstar Healthcare Holdings, Inc.'s and the Non-Debtor Loan Parties' obligations to the Agent and the Lenders under the Super Priority Credit Agreement and Super Priority Loan Documents, Debtor Northstar Healthcare Holdings, Inc. and certain of its affiliates, as grantors and guarantors, and the Agent executed and delivered that certain Guaranty and Security Agreement, dated as of May 22, 2019 (as amended or otherwise modified from time to time, the "Super Priority Guaranty and Security Agreement" and together with the Guaranty and Security Agreement, the "Guaranty and Security Agreements").  A true and correct copy of the Super Priority Guaranty and Security Agreement was provided to the Chapter 7 Trustee's counsel on October 22, 2019.

14.    Pursuant to the terms and conditions of the Guaranty and Security Agreements, Debtor Northstar Healthcare Holdings, Inc. and certain of its affiliates party to one or more Guaranty and Security Agreements, to secure the repayment of the Indebtedness owing by the Debtors and the Non-Debtor Loan Parties under the Credit Agreements and the performance of the Debtors' and the Non-Debtor Loan Parties' respective obligations under the Credit Agreements and the other loan documents executed in connection therewith, granted to the Agent, for the benefit of itself and the Lenders, a first-priority security interest in and lien on substantially all of the assets of the Debtors and the Non-Debtor Loan Parties, including, but not limited to the Sweep Account.

C. <u>**SECURITY INTERESTS IN THE SWEEP ACCOUNT PERFECTED**</u>

15.     The Agent properly perfected its enforceable, unavoidable, first-priority security interests in and liens on the Sweep Account and all deposits therein by Debtor Northstar Healthcare Acquisitions, L.L.C.'s executing and delivering that certain Deposit Account Control Agreement (Exclusive Control), dated as of May 22, 2019, by and between Borrower Debtor, the Agent and Compass Bank d/b/a BBVA Compass, as depository bank (the "<u>Deposit Account Control Agreement</u>").  A true and correct copy of the Deposit Account Control Agreement is attached hereto as **Exhibit B** and is incorporated herein for all purposes.

D. **EVENTS OF DEFAULT UNDER THE CREDIT AGREEMENTS AND THE OTHER LOAN DOCUMENTS HAVE OCCURRED AND CONTINUED PRIOR TO THE SEPTEMBER 24, 2019 ACCELERATION OF THE INDEBTEDNESS UNDER THE CREDIT AGREEMENT**

16.     Since on or about October, 2018 the Debtors and the Non-Debtor Loan Parties have been in default under the Credit Agreement and the related loan documents executed in connection therewith, first on account of certain financial covenant defaults and later on account of their failure to make certain interest and principal payments due and owing under the Credit Agreement, which defaults remain uncured.  These loans have been in workout for over 11 months, with the Agent and the Lenders agreeing to numerous waivers (collectively, the "<u>Limited Waivers</u>") and forbearances (collectively, the "<u>Forbearance Agreements</u>"), with (i) commitments by the Debtors and the Non-Debtor Loan Parties to sell their assets or otherwise refinance the Indebtedness by certain deadlines (which deadlines the Debtors and the Non-Debtor Loan Parties repeatedly failed to meet, even after numerous extensions, and which sale or refinancing efforts were unfortunately ultimately unsuccessful), (ii) acknowledgements from the Debtors and the Non-Debtor Loan Parties that certain events of default had occurred and were continuing, and (iii) full releases by the Debtors and the Non-Debtor Loan Parties in favor of the

Agent and the Lenders.  True and correct copies of each Limited Waivers and Forbearance Agreements were provided to the Chapter 7 Trustee's counsel on October 22, 2019.

17.    As a result of the foregoing events of default and the termination of the forbearance periods under the Forbearance Agreements on or before August 30, 2019, as a result of the expiration of such forbearance periods and/or the occurrence and continuation of certain events of default which earlier terminated such forbearance periods, the Agent on behalf of itself and the Lenders, pursuant to a Notice Letter delivered to the Debtors and certain of their affiliates (the "September 24, 2019 Notice Letter"), accelerated all of the Indebtedness (other than that indebtedness under the Super Priority Credit Agreement, which had already matured and become due and payable under its terms), made demand for payment of the Indebtedness to the Debtors and the Non-Debtor Loan Parties and informed the same that the Agent intended to exercise all of its rights and remedies under the Credit Agreements and the loan documents executed in connection therewith, including seeking the appointment of a receiver.  A true and correct copy of the September 24, 2019 Notice Letter was provided to the Chapter 7 Trustee's counsel on October 22, 2019.

### E.  THE APPOINTMENT OF A COLLATERAL RECEIVER

18.    Based on the Debtors' and Non-Debtor Loan Parties' financial distress and their consent under the Guaranty and Security Agreements to the appointment of a receiver, on September 24, 2019, the Agent filed its Verified Original Petition and Application for Temporary Restraining Order, Preliminary and Permanent Injunction, and for the Immediate Appointment of Temporary Receiver, in the 44th Judicial District Court of Dallas County, Texas (the "State Court"), Cause No. DC19-15508, styled "BBVA USA, as Agent, Plaintiff, vs. Northstar Healthcare Acquisitions, L.L.C., Et al., Defendants." (the "State Court Action").

19.     There were numerous grounds cited for the appointment of a collateral receiver, as more fully set forth in that certain Order Immediately Appointing Temporary Receiver, Granting Temporary Restraining Order, and Ordering Turnover of Collateral to the Receiver (the "Receivership Order"), entered by the State Court on September 24, 2019.

20.     The Receiver, Howard Marc Spector, was appointed under the Receivership Order to act as the Receiver for the assets of the Debtors and Non-Debtor Loan Parties subject to the liens of the Agent, consisting primarily of accounts receivable, general intangibles, equipment, and inventory, and was charged with the responsibility to effect the wind down and liquidation of such assets and appointed as the attorney-in-fact for the Debtors and Non-Debtor Loan Parties to execute any and all documents or to take any and all actions reasonable or necessary to accomplish his responsibilities as set forth in the Receivership Order.  Included within the receivership estate are servers and stored data, books and records that may be co-owned by the Debtors and the Non-Debtor Loan Parties that are necessary and beneficial to the Receiver in the performance of his duties and which are maintained by the Receiver through protective advances made by the Agent under the Receivership Order.

## F.  THE CHAPTER 7 VOLUNTARY PETITIONS AND REQUEST FOR RELIEF

21.     The October 21, 2019 Chapter 7 voluntary petitions filed by the Debtors and the imposition of the automatic stay in respect of the Debtors (which are three of the defendants under the Receivership Order), has clouded the authority of the Receiver to act under the Receivership Order in respect of all of the Non-Debtor Loan Parties that are subject to the Receivership Order, and there is a serious concern that the October 21, 2019 Chapter 7 voluntary petitions filed by the Debtors may be misunderstood by the State Court or third parties seeking to work with the Receiver in effecting the wind down, sale, or monetization of the assets of the Non-Debtor Loan Parties that

EXPEDITED MOTION FOR ENTRY OF ORDER GRANTING BBVA USA, AS AGENT, RELIEF FROM THE AUTOMATIC STAY AND OTHER RELIEF UNDER 11 U.S.C. § 362(d)(1) - Page 9

502565845 v2 1286309.00020

constitute the collateral of the Agent securing the Indebtedness, including the Receiver's authority to exercise control over the Non-Debtor Loan Parties. In addition, the automatic stay prevents the Agent from using any amounts contained in the Sweep Account to make protective advances to the Receiver that are necessary to (i) fund payroll, security, insurance and other critical expenses in connection with the Receiver's orderly wind down of the assets of the Non-Debtor Loan Parties (and which are also necessary to comply with law in respect of pharmaceuticals and confidential patient information), and (ii) fund the continued monetization of the remaining assets of the Non-Debtor Loan Parties through the continued collection of accounts receivable and general intangibles and the sale of equipment, inventory and other assets of the Non-Debtor Loan Parties. Finally, the automatic stay calls into question the Receiver's ability to access and utilize the servers, data, books and records (collectively, the "**Books and Records**") that are collateral and that are necessary to the Receiver's performance of the Receiver's duties under the Receivership Order.

22.    The Agent wishes, for the Receiver and itself, to avoid any confusion regarding the powers and authority of the Receiver to continue to wind-down and sell the assets of the Non-Debtor Loan Parties under the Receivership Order. Further, any delay in allowing the funds in the Sweep Account to be used by the Agent as protective advances will materially harm the ability of the Receiver to protect (including, without limitation, by continuing to retain security personnel to secure pharmaceuticals and confidential patient information) and monetize the remaining assets of Non-Debtor Loan Parties.

23.    In short, this Court should grant the  Agent stay relief to (i) make clear that the Receivership Order shall remain in full force and effect, except that the Agent (and the Receiver) shall take no action against the Debtors or the assets of the Debtors, save and except for the Sweep Account and allowing the Agent relief from stay to apply funds from the Sweep Account (which are

necessary for the Agent to make protective advances to the Receiver or otherwise apply against the

outstanding Indebtedness) and Books and Records, in each case, for the reasons set forth herein,

including, without limitation:

     a.    except, as noted above, with respect to the Sweep Account in the name of the Borrower Debtor and possibly the Books and Records, there are no assets of the Debtors and there are no operations of the Debtors.

     b.    the Agent needs access to the funds on deposit now and hereafter in the Sweep Account as a source of payment for purposes of, among other things, making protective advances to the Receiver to allow the Receiver to continue to wind-down the assets of Non-Debtor Loan Parties and to continue to comply with applicable law in respect of the treatment of patient records and pharmaceuticals;

     c.    the Receiver will preserve and maintain the Books and Records at the expense of the receivership estate for the benefit of the Chapter 7 Trustee and the Debtors' estates; and

     d.    given the immediate need to proceed with continuing to wind-down unprofitable operations and monetize assets of the Non-Debtor Loan Parties, the Agent, acting in an abundance of caution, has filed this Motion on an expedited basis.

## ARGUMENT

### A.  RELIEF FROM AUTOMATIC STAY FOR CAUSE UNDER 11 U.S.C. § 362(d)(1)

24.    The Court should enter an order to modify the automatic stay in this bankruptcy

proceeding pursuant to 11 U.S.C. § 362(d)(1) as against the Agent and Receiver to, inter alia, (i)

clarify that the Receivership Order remains in full force and effect and thereby avoid any

uncertainty regarding the Receiver's authority to continue to operate under the terms and conditions

of the Receivership Order, except that the Agent (and the Receiver) shall take no action against the

Debtors or the assets of the Debtors, save and except for the Sweep Account and allowing the Agent

relief from stay to apply funds from the Sweep Account (which are necessary for the Agent to make

**EXPEDITED MOTION FOR ENTRY OF ORDER GRANTING BBVA USA, AS AGENT,**
**RELIEF FROM THE AUTOMATIC STAY AND OTHER RELIEF UNDER**
**11 U.S.C. § 362(d)(1) - Page 11**

502565845 v2 1286309.00020

protective advances to the Receiver or otherwise apply against the outstanding Indebtedness), (ii) allow the Agent to access the funds in the Sweep Account to, among other things, pay protective advances to the Receiver and otherwise apply such funds against the Indebtedness owed to the Agent and the Lenders, (iii) permit the Receiver to maintain and possess the Books and Records, (iv) make clear that the Agent is permitted to appoint a designee, agent or representative to reconcile accounts and distributions by a non-Debtor entity in which the Debtors hold an indirect interest; such entity not being a wholly-owned subsidiary of the Debtors, in each case because "cause" exists for the following reasons:

    a.    The Debtors do not have any unencumbered cash or other unencumbered assets with which to provide the Agent with adequate protection of its interests in the Sweep Account.

    b.    The Debtors have no equity in the Sweep Account given that the Indebtedness owing to the Agent and the Lenders is in excess of $135 million and the funds from the Sweep Account are in the approximate amount of $450,000.

    c.    The Receiver, not the Chapter 7 Trustee acting for the Debtors, is actually effecting the wind down of the assets of the Non-Debtor Loan Parties. Accordingly, the stay relief order needs to make clear that the Receiver may continue to take all actions authorized under the Receivership Order, except that the Agent (and the Receiver) shall take no action against the Debtors or the assets of the Debtors, save and except for the Sweep Account and allowing the Agent relief from stay to apply funds from the Sweep Account.

25.    Further, the Court for cause should clarify and determine that the Receivership Order and the Receiver's performance of his duties and exercise of his rights under the Receivership Order do not constitute an exercise of control over the Debtors or their estates in violation of the stay.

26.    Accordingly, if this Court does not grant the relief sought in this Motion, the Agent and the Lenders will suffer further real and irreparable harm.  Further, the Agent would be deprived

of the adequate protection to which it is entitled under 11 U.S.C. § 362 of the Bankruptcy Code. There are no other available means for providing the Agent with such adequate protection.

27.     As a result, grounds exist under 11 U.S.C. § 362(d)(1) of the Bankruptcy Code for the Court to grant the Agent the relief sought herein and as more fully set forth in the proposed Order attached hereto and incorporated herein as **Exhibit C**.

28.     Recognizing the exigent circumstances described in this Motion, the Agent's counsel met by phone with the Chapter 7 Trustee and his counsel on October 22, 2019 and (i) described the entire history of the Agent's relationship with the Debtors and the Non-Debtor Loan Parties, (ii) described the circumstances under which the Receiver was appointed in the State Court action, (iii) explained in detail the facts and circumstances for seeking relief from stay consistent with the terms of this Motion, (iv) provided all of the relevant documents and pleadings as noted above, and (v) notified the Chapter 7 Trustee that the Agent would be filing this Motion today and seeking an expedited hearing on this Motion.

29.     The Agent reserves the right to amend this Motion prior to the time of hearing on this Motion.

**WHEREFORE**, the Agent requests that this Court:

a.      modify the Automatic Stay as against the Agent and the Receiver to (i) clarify that the Agent and the Receiver may continue to exercise any and all of its respective rights, powers, duties and remedies under the Credit Agreements, the loan documents executed in connection therewith, and the Receivership Order, as applicable, as against Non-Debtor Loan Parties, (ii) allow the Agent to access the funds in the Sweep Account to, among other things, make protective advances and otherwise apply such funds to the payment of the Indebtedness in accordance with the provisions of the Credit Agreements and the loan documents executed in connection therewith, (iii) allow the Receiver to continue to possess and maintain the Books and Records, (iv) clarify and determine that the Receivership Order and the Receiver's performance of his duties and exercise of his rights under the Receivership Order does not constitute an exercise of control over the Debtors or their estates, (v) make clear that the Agent may retain one or more individuals or

EXPEDITED MOTION FOR ENTRY OF ORDER GRANTING BBVA USA, AS AGENT,
RELIEF FROM THE AUTOMATIC STAY AND OTHER RELIEF UNDER
11 U.S.C. § 362(d)(1) - Page 13

502565845 v2 1286309.00020

designees to reconcile accounts and distributions by a non-Debtor entity in which the Debtors hold an indirect interest; such entity not being a wholly-owned subsidiary of the Debtors, and (vi) clarify various other rights and remedies of the Agent to enable the Agent to continue to receive the equity distributions from the Elite Entities[1], following the reconciliations and distributions to be effected by such empowered designee; and

b.  grant the Agent such other and further relief as is just and proper.

**DATED** this 24th day of October, 2019.

Respectfully submitted,

**DLA PIPER, LLP (US)**

By: _/s/ Stuart M. Brown_
Stuart Brown, Esq. (DE #4050)
1201 North Market Street, Suite 2100
Wilmington, Delaware, 19801
Telephone(302) 468-5640
Fax: (302) 394-2341

- and -

**K&L GATES LLP**

By: _/s/ David Weitman_

David Weitman, Esq.
Texas State Bar No. 21116200
Christopher A. Brown, Esq.
Texas State Bar No. 24040583

1717 Main Street, Suite 2800
Dallas, Texas 75201
Phone: (214) 939-5500
FAX: (214) 939-5849

**ATTORNEYS FOR BBVA USA, AS AGENT**

---

[1] The term "Elite Entities" shall mean (i) Elite Sinus Spine and Ortho, LLC, (ii) Houston Metro Ortho and Spine Surgery Center, LLC, (iii) Elite Center for Minimally Invasive Surgery, LLC, and (iv) Elite Hospital Management, LLC.

**EXPEDITED MOTION FOR ENTRY OF ORDER GRANTING BBVA USA, AS AGENT, RELIEF FROM THE AUTOMATIC STAY AND OTHER RELIEF UNDER 11 U.S.C. § 362(d)(1) - Page 14**

502565845 v2 1286309.00020